J-S17017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  T.D.C. AND T.C.Q.C., MINOR CHILDREN | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.C., MOTHER | : : : : : : | |
| | : | No. 1630 EDA 2016 |

Appeal from the Decrees entered April 26, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos:  CP-51-AP-0000314-2016,
CP-51-AP-0000315-2016, FID:  51-FN-002094-2014

BEFORE:   OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 04, 2017**

T.C. ("Mother") appeals from the decrees entered on April 26, 2016, in the Court of Common Pleas of Philadelphia County, that involuntarily terminated her parental rights to her daughter, T.D.C., born in February of 2013, and her son, T.C.Q.C., born in August of 2014 (collectively, "the Children").[1]  Upon careful review, we affirm.[2]

---

[1] By separate decree on April 26, 2016, the trial court involuntarily terminated the parental rights of the Children's father, S.W. ("Father"). Father filed notices of appeal, which this Court disposed of by separate memorandum.  ***See In re T.D.C. and T.C.Q.C.***, 1596 & 1598 EDA 2016 (Pa. Super. 2016) (unpublished memorandum).

[2] We observe that the Child Advocate filed a brief in support of the decrees involuntarily terminating Mother's parental rights to the Children.

The trial court aptly set forth the facts and procedural history of this case, which we adopt herein. **See** Trial Court Opinion, 7/27/16, at 2-10. By way of relevant background, the Philadelphia Department of Human Services ("DHS") received a report in August of 2014, alleging that at the time of T.C.Q.C.'s birth, the child and Mother tested positive for benzodiazepines, marijuana, and oxycodone. **Id.** at 4-5. Approximately one month later, DHS received a report that Mother and Father were struggling to meet the needs of their older child, T.D.C. **Id.** at 5. On September 25, 2014, Mother took T.D.C. to the emergency room, where the child "was presented to the physicians nearly lifeless and in respiratory distress due to a virus and asthma. The [c]hild was administered six liters of oxygen because she was barely able to breathe on her own and was admitted to the hospital." **Id.** at 6 (citation to record omitted).

The trial court placed the Children in protective custody on September 29, 2014, and they were adjudicated dependent on October 14, 2014. **Id.** at 7. DHS set the Children's permanency goal as return to parent. Mother was required to satisfy the following Single Case Plan ("SCP") objectives: attend the Clinical Evaluation Unit ("CEU") and comply with all recommendations for drug and alcohol treatment; comply with all recommendations of Behavioral Health Services ("BHS"); attend intensive outpatient services at NuStop and complete a random drug screens; sign releases of information to allow the Community Umbrella Association

("CUA") to obtain information on drug and alcohol compliance; comply with Greater Philadelphia Health Action ("GPHA") for mental health treatment; and attend court-ordered visitation. *Id.* at 8, 10 (citations to record omitted).

On April 6, 2016, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The trial court held a hearing on April 26, 2016, during which DHS presented the testimony of the CUA case manager, Tyrone Jessie, and the visitation coach from Turning Points for Children, Portia Bailey. Mother testified on her own behalf. Specifically, Mother testified that she is diagnosed with bipolar disorder, depression, and anxiety. N.T., 4/26/16, at 53.

By decrees dated and entered on April 26, 2016, the trial court involuntarily terminated Mother's parental rights. On May 25, 2016, Mother timely filed a notice of appeal and a concise statement of errors complained of appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).[3] The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on July 27, 2016.

---

[3] The trial court entered separate decrees terminating Mother's parental rights to T.D.S. and T.C.Q.C. Mother improperly filed only one notice of appeal and one concise statement of errors complained of on appeal from the decrees. *See* Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves [sic] issues arising on more than one docket or relating to

*(Footnote Continued Next Page)*

- 3 -

On appeal, Mother presents the following issues for our review:

> 1) Did the [trial court] err in terminating Mother's parental rights even though she had fairly consistent weekly visits with her children and the visits were appropriate?
>
> 2) Did the [trial court] err in terminating Mother's parental rights due to the fact that Mother had appropriate housing?
>
> 3) Did the [trial court] err in terminating Mother's parental rights because Mother was in compliance with the objective of Mental Health and Drug and Alcohol treatment set by the agency and/or DHS?

Mother's Brief at 3.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

_____
*(Footnote Continued)* ────────────────

more than one judgment, separate notices of appeal must be filed."). Because Mother's arguments on appeal are identical as to the Children, we discern no prejudice arising from his procedural misstep. Therefore, we decline to quash or dismiss Mother's appeal.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record sustains the trial court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has stated as follows.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). Further, we have stated, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, Mother contends that the trial court abused its discretion in terminating her parental rights for the following reasons:[4]

---

[4] In her brief, Mother neither divides the argument into separate parts nor distinctively displays her claims. *See* Pa.R.A.P. 2119 (providing "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part -- in distinctive type or in type of distinctively displayed -- the particular point treated therein, followed by such discussion and citation of the parties as are deemed pertinent"). Further, the text in the entire substantive portion of Mother's brief is not double spaced as required by Rule 124(3). Pa.R.A.P. 124(3) ("Text must be double spaced, but quotations more than two lines long may be indented and single spaced. Footnotes may be single spaced. . . ."). Rather, Mother's brief is single spaced. Pa.R.A.P. 2101 underscores the seriousness with which this Court takes deviations from the procedural rules, as it permits us to quash or dismiss an appeal for procedural noncompliance. Therefore, we strenuously caution Mother's counsel about following the Rules. Here, we address Mother's appeal insofar as the Rules permit.

> Turning Points for Children Visitation Coach, Portia Bailey[,] indicated that the [C]hildren were happy to see Mother for the visits and she would bring things such as toys, clothes, shoes and food. Ms. Bailey indicated that Mother made two of the three visits she supervised in 2016. Mother is appropriate during the visits. Mother testified credibly that she has appropriate housing. Mother is also employed full time.
>
> Mother also testified credibly that she is attend[ing] mental health and medication management at GPHA. Mother signed releases so CUA could obtain information about her treatment there. Mother also submitted to drug and alcohol screens while in treatment at GPHA.

Mother's Brief at 10 (citations to record omitted). We reject Mother's claims.

Indeed, the testimonial evidence supports the court's decision to terminate Mother's parental rights pursuant to Section 2511(a)(2). The CUA case manager, Tyrone Jessie, testified that, although Mother started services at GPHA in September of 2015, and completed a psychiatric evaluation, "she's only attended two biweekly individual therapy appointments, and has not attended any group therapy that was recommended by the psych eval on October 11[th], 2015." N.T., 4/26/16, at 7-8. In addition, Mr. Jessie testified that he has received no documentation indicating that Mother attended the CEU or BHS for an assessment, or that Mother has pursued any drug and alcohol treatment throughout the history of this case. *Id.* at 9-10, 13, 20-21.

With respect to supervised visits with the Children, Portia Bailey, the visitation coach for this family since March of 2015, through the time of the hearing, testified that Mother's visits were initially scheduled weekly for two

hours. *Id.* at 29. In March of 2015, the visits were decreased to one hour weekly. *Id.* In June of 2015, the visits were decreased to one hour biweekly because Mother "started to miss more and more visits." *Id.* at 24-25, 29. She testified that Mother attended half of the scheduled visits. *Id.* at 25. Specifically, Ms. Bailey testified that she "covered" seventeen or eighteen visits, and that Mother attended eight or nine of them. *Id.* at 35. In addition, Ms. Bailey testified that approximately two visits ago Mother may have been under the influence, presenting with eyes that were "glassy and they were kind of, like, low. . . ." *Id.* at 26-27.

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2). The testimonial evidence demonstrates that Mother's repeated and continued incapacity, neglect, or refusal to comply with her mental health and drug and alcohol objectives has caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, the causes of Mother's incapacity, neglect, or refusal cannot or will not be remedied.[5] Accordingly, we affirm the decrees.

Decrees affirmed.

---

[5] Mother does not raise an issue with respect to Section 2511(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2017